[Crim. No. 4291. Fifth Dist. Nov. 30, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
TEDDY LEE COMPELLEEBEE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, and Adrian K. Panton, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and John R. Duree, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN (G.A.), P. J.**—Appellant challenges the extension of his term as a mentally disordered sex offender (MDSO) made pursuant to Welfare and Institutions Code section 6316.2.[1] He contends that, notwithstanding the absence of an express statutory requirement that amenability to treatment is a prerequisite to an order extending his term of commitment, both statutory construction and constitutional

---

[1] All references are to the Welfare and Institutions Code unless otherwise indicated.

mandate require that a finding of amenability be made. He further contends that the finding by the court did not satisfy the requirement and, in any event, the evidence is insufficient to support a finding beyond a reasonable doubt that he could benefit from treatment. We agree with the first and third contentions and, for the reason to be stated, find it unnecessary to pass upon the second.

Appellant was convicted on April 25, 1974, of rape (Pen. Code, § 261, subd. 2) and was committed to the California Department of Mental Health as a mentally disordered sex offender. (See § 6316.) His initial commitment period expired on March 13, 1979. Before the expiration of the initial term these proceedings were timely instituted for a term extension of one year pursuant to section 6316.2. After a trial by the court appellant was recommitted for one year commencing on March 13, 1979.

At the relevant times section 6316.2 provided in pertinent part: "(a) A person may be committed beyond the term prescribed by Section 6316.1 only under the procedure set forth in this section and only if such person meets all of the following:

"(1) The 'sex offense' as defined in subdivision (a) of Section 6302 of which the person has been convicted is a felony, whether committed before or after July 1, 1977, or is a misdemeanor which was committed before July 1, 1977.

"(2) Suffers from a mental disease, defect, or disorder, and as a result of such mental disease, defect, or disorder, is predisposed to the commission of sexual offenses to such a degree that he presents a serious threat of substantial harm to the health and safety of others.

". . . . . . . . . . . . . .

"(f) If the court or jury finds that the patient is a person described in subdivision (a), the court may order the patient committed to the State Department of Mental Health in a treatment facility. A commitment or a recommitment...shall be for a period of one year from the date of termination of the previous commitment."

There is no contention herein that appellant did not come within the purview of subdivisions (a) (1) and (2) of section 6316.2.

■ Section 6316.2 does not explicitly require that the court find the person could benefit by treatment in a hospital. Appellant argues that a finding beyond a reasonable doubt that he could benefit from further care and treatment is nevertheless required by statutory construction and constitutional mandate.

■ A finding an MDSO "could benefit by treatment in a state hospital, or other mental health facility" is required before a person may be committed in the first instance. (§ 6316.) The finding of amenability to treatment is required to be shown by the People beyond a reasonable doubt. (*People* v. *Feagley* (1975) 14 Cal.3d 338, 347 [121 Cal.Rptr. 509, 535 P.2d 373]; see *People* v. *Burnick* (1975) 14 Cal.3d 306, 332 [121 Cal.Rptr. 488, 535 P.2d 352].)[2]

■ Statutes relating to the same subject must be construed together and harmonized if possible. (*Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].) If two alternative interpretations of a statute are presented, the court should choose that construction which will uphold the validity of the statute and be constitutional. (*Espinosa* v. *Superior Court* (1975) 50 Cal.App.3d 347, 352-353 [123 Cal.Rptr. 448].) ■ The Legislature is presumed to have knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].)

---

[2]*People* v. *Feagley, supra,* 14 Cal.3d 338, dealt with what is now an obsolete version of section 6316. *Feagley* also involved section 6326, which has been repealed. (§ 6316, as amended, plus the repeal of § 6326, cures most of the constitutional defects noted by the *Feagley* court.)

*Feagley* concerned a person who was committed even though the trial court found he was an MDSO who *would not* benefit from treatment. Because of the repeal of section 6326 and amendment of section 6316 that can no longer occur. *Feagley,* in essence, held that a person could not be committed if he was found to be an MDSO who will not benefit from treatment because (1) treatment was not provided such person and (2) treatment was the constitutional justification for committing an MDSO. The court held that if a person is an MDSO who will not benefit from treatment, any commitment is invalid because it constitutes cruel and unusual punishment. (*Id.,* at pp. 375-376.) Prior to *Feagley* persons who were MDSO's who would not benefit from treatment were committed to institutions where no treatment was provided (under the outdated and repealed code §§ of 6316 and 6326). That practice of committing people who would not benefit from treatment ended with *Feagley* and the revision and repeal of sections 6316 and 6326, respectively. (See *People* v. *Oglesby* (1977) 67 Cal.App.3d 34, 40, fn. 3 [135 Cal.Rptr. 640].) *Feagley* commands what section 6316 now requires: commitment may only be imposed if the person is an MDSO who "could benefit from treatment." (See also *People* v. *Saffell* (1979) 25 Cal.3d 223, 229-230 [157 Cal.Rptr. 897, 599 P.2d 92].)

██ Here the Supreme Court has determined that due process requires two findings, that the person is an MDSO and that said person could benefit from treatment, before a commitment under section 6316 may be ordered. (*People* v. *Feagley, supra,* 14 Cal.3d at p. 347.) If we construe section 6316.2 according to its literal interpretation an absurd result would occur: the statute would call for cruel and unusual punishment because it orders a commitment without a finding that the person could benefit from treatment. (*Id.,* at pp. 375-376.) In other words, commitment extensions would be unconstitutional. Alternatively, if we construe section 6316.2 to require a finding that the MDSO could benefit from treatment the statutes are in harmony, an "irreconcilable inconsistency" is avoided, and section 6316.2 is constitutional.[3] (Cf., *Estate of McDill, supra,* 14 Cal.3d at p. 837.)

Moreover, the entire statutory scheme suggests strongly that the Legislature intended the finding of "could benefit" be part of any commitment extension proceeding. Section 6325 sets forth the procedures to be followed if a mental health facility determines an MDSO should be returned to the committing court for sentencing on the criminal charge. Subdivision (a) of that section provides for return of the MDSO when he "(a) has been treated to such an extent that in the opinion of the superintendent... *the person will not benefit by further care and treatment in the hospital or facility* and is not a danger to the health and safety of others...." (Italics added.) Subdivision (b) provides for such return when the person "has not recovered, and in the opinion of the superintendent or county mental health director the person is still a danger to the health and safety of others...." It is conceded by both parties that implicit in subdivision (b) is a requirement that an MDSO be unamenable to treatment.

Further, on the return of the MDSO to the court section 6325.2 affords either party, upon the requisite showing, the right to a hearing to challenge the certified opinions of the superintendent made with reference to persons within subdivision (a) or (b) of section 6325. If the

---

[3] In *People* v. *Superior Court (Rigg)* (1978) 80 Cal.App.3d 407 [145 Cal.Rptr. 711] a challenge to section 6316.2's constitutionality was made on equal protection grounds. The statute was upheld because persons who are committed have been found to be MDSO's who could benefit from treatment, and that difference is the constitutional ground allowing extension in contrast to sentence to prison. (*Id.,* at p. 414.) On the same rationale section 6316.1 was upheld in *People* v. *Saffell, supra,* 25 Cal.3d at pages 229-230. Section 6316.1 mandates that the "upper term" be imposed upon all persons committed as MDSO's.

court determines at the hearing that the person is an MDSO "...*who could benefit by treatment*...the court may direct that the previous order of commitment remain in full force and effect." (Italics added.)

 In addition, subdivision (i) of section 6316.2 places "an affirmative obligation on the department to provide treatment for the underlying causes of the person's mental disorder." The MDSO is entitled to a continuous right of judicial review by way of habeas corpus to enforce this obligation. (Cf. *In re Moye* (1978) 22 Cal.3d 457, 460 [149 Cal.Rptr. 491, 584 P.2d 1097]; *In re Ingram* (1978) 76 Cal.App.3d 495, 499 [142 Cal.Rptr. 825].)

 Requiring a finding that an MDSO "could benefit from treatment" in section 6316.2 proceedings would put that section in harmony with sections 6316 and 6325.2 and render section 6316.2 constitutional.[4]

Accordingly, we conclude both by reason of constitutional mandate and statutory construction that a finding that an MDSO "could benefit" from treatment must be made before an MDSO may have his commitment extended under section 6316.2.

 The next question is whether there was substantial evidence to support a finding that appellant could benefit from further care and treatment at Atascadero.

Preliminarily, we note that the court did not find beyond a reasonable doubt that appellant could benefit but appears to have deliberately di-

---

[4]During the 1979 legislative session the Legislature enacted an amendment to section 6316.2 (see Stats. 1979, ch. 992). Subdivision (j) of that amendment states: "(j) Amenability to treatment is not required for a finding that any person is a person as described in subdivision (a), nor is it required for treatment of such person. Treatment programs need only be made available to such person. Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program."

While the amendment does not apply to the case at bench and therefore we need not expressly pass upon its validity, subdivision (j) is constitutionally suspect. *People* v. *Feagley, supra,* 14 Cal.3d 338, held it was constitutionally impermissible to commit an MDSO to a hospital for treatment when he could not benefit from the treatment. The same rationale should apply to a commitment at any stage of the proceedings, including a recommitment, and, as we have pointed out, the statutes as a whole seem to contemplate a continuous review procedure to assure amenability during the course of the MDSO's stay at the hospital facility. Accordingly, under the dictates of *Feagley,* subdivision (j) of the amendment of 1979 would appear to be unconstitutional. We therefore accord no force to the amendment in interpreting the statute as it read at the time of the events herein.

luted the efficacy of that concept by the verbiage it used. The court found: "The court also finds beyond a reasonable doubt that Mr. Compelleebee may be amenable to treatment, but not necessarily that he is. The court finds beyond a reasonable doubt that Mr. Compelleebee, over a prolonged period of treatment at a state hospital or another psychiatrically oriented facility, probably would benefit from treatment, and that the probability would increase in proportion to the length of time that he is treated. I do not find beyond a reasonable doubt that he is amenable to treatment. I find beyond a reasonable doubt that he probably is, and the degree of probability is in direct proportion to the length of time that he is treated."

There is a serious question whether finding beyond a reasonable doubt that appellant "may be amenable to treatment" or probably is amenable to treatment or "probably would benefit from treatment" is the conceptual or actual equivalent of finding beyond a reasonable doubt that appellant "is amenable to treatment" or "could benefit from treatment," particularly when the court expressly said it was not making the latter findings. We need not become entangled in this semantic cobweb, however, as we have concluded that, assuming the terms are equivalent, the record is practically devoid of evidence or legitimate inferences that may be drawn therefrom to support a finding beyond a reasonable doubt of amenability to treatment.

The leading case articulating the substantial evidence rule on appeal is *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321], where the court states: "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.]

"... Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact. [Citations.]"

In *People* v. *Reyes* (1974) 12 Cal.3d 486, 496-497 [116 Cal.Rptr. 217, 526 P.2d 225], the court set forth the reasonable trier of fact standard: "In reviewing a criminal conviction, an 'appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.' [Citations.] The substantial evidence rule is our yardstick for determining whether a verdict meets this minimal standard of reasonableness: 'The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.' [Citations.] To be considered substantial, evidence must be of the type which 'reasonably inspires confidence and is "of solid value."' [Citation.]"

In *In re Frederick G.* (1979) 96 Cal.App.3d 353, 364 [157 Cal.Rptr. 769], this court held the appellate court has the obligation to review the whole record, stating: "Implicit in the appellate court's duty to consider the weight of the evidence and to determine '"...whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt"' (*People* v. *Reyes, supra,* 12 Cal.3d at p. 496) is the obligation to review the whole record."

The evidence on the issue of whether appellant could benefit from further care or treatment at Atascadero came from three psychiatrists and the Atascadero hospital records. There is no reference to any specific material in the hospital records which indicated that appellant could benefit from treatment. The psychiatrists were Jack E. McDougal, M.D., of the hospital staff, and independent psychiatrists F. M. Criswell, M.D., and Theodore M. Badgley, M.D., appointed by the court. All three psychiatrists testified that appellant was an MDSO, that he was a danger to society and that he could not benefit from further treatment at Atascadero.

Dr. McDougal elaborated in his report, which he substantially repeated at trial: "He has received no benefit from treatment at this hospital....

"...I can see no obvious evidence of any marked improvement in this patient's basic personality and/or behavior now as opposed to when he was admitted to Atascadero State Hospital over 4 years ago....

"We then come to the problem as to whether Mr. Compelleebee would benefit from further treatment if his release date were extended another year. In my professional opinion he would not benefit one iota from further treatment at this hospital. If you kept him here I think you would be looking at a man who would have the same basic problems he has right now and would only be a year older. However, Mr. Compelleebee is a potentially extremely dangerous person and if released into society and with the proper stress (which would not have to be very much) he could break the law again and commit some possibly dangerous act and reoffend.

"This would seem to put us on the horns of a dilemna. On the one hand we have a man who would not benefit from further treatment but who is dangerous and potentially violent. The question then is, do we extend him for purposes of treatment? Or, do we extend him just so we can 'detain' him in a prisonlike fashion for the protection of society? This is a question that the court will have to answer."

Dr. McDougal further testified that any further retention of appellant at Atascadero would merely mean keeping him out of trouble.

Dr. Criswell testified that there is no effective form of treatment for appellant's particular personality or character disorder.

The only smidgen of evidence to the contrary is to the effect that during the last year or two appellant became less physically aggressive (though apparently his verbal aggessiveness continued) and had engaged in less self-mutilation. The doctors who were asked, however, agreed that this improvement was not due to the treatment he had received for his underlying psychiatric condition but to (1) his maturation, that is, the natural progress of aging, (2) restraints and external controls at Atascadero, and (3) becoming institutional-wise and making a conscious effort to do that which would facilitate his release from the institution. Thus, all three of the explanations for appellant's improved behavior could as well have taken place in a prison setting where no treatment had been afforded. The doctors testified that the fact there was this change in these facets of his overt behavior did not indicate a basic change in his underlying psychiatric disorder or dangerous potential.

On its face, and in light of the experts' explanations, the evidence suggesting there was minimal improvement does not reasonably inspire

confidence and is not of solid value. Therefore, based upon the whole record we cannot say that any reasonable trier of fact could have found the People sustained their burden of proving beyond a reasonable doubt that appellant could benefit from further treatment at the state hospital facility.

The order is reversed.

Hopper, J., and Fretz, J.,* concurred.

A petition for a rehearing was denied December 26, 1980, and respondent's petition for a hearing by the Supreme Court was denied February 14, 1980.

*Assigned by the Chairperson of the Judicial Council.