[Crim. No. 11896. Fourth Dist., Div. One. Sept. 10, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
BOB LEE ROBERTS, Defendant and Appellant.

## COUNSEL

John A. Crawford, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske and Richard D. Hendlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STANIFORTH, J.**—Defendant Bob Lee Roberts appeals from an order extending his commitment as a mentally disordered sex offender (MDSO) for two years pursuant to Welfare and Institutions Code section 6316.2.[1] Roberts contends section 6316.2, subdivision (j), is unconstitutional because it provides a finding of amenability is not a prerequisite for extending the commitment of an MDSO beyond the maximum term he could have served for the underlying criminal offense. We conclude Roberts' argument is without merit.

### FACTS

On August 5, 1973, Roberts picked up 15-year-old Cherie W., who was hitchhiking, and took her to his house. When Cherie refused to let Roberts kiss her, Roberts dragged her into the bedroom, took her clothes off, tied her up, forced her to engage in various acts of oral copulation, and then raped her. Later, when Cherie began to scream, Roberts either strangled her, used an extension cord to electrocute her, or both.[2]

---

[1] All references are to the Welfare and Institutions Code unless otherwise specified.

[2] One psychiatrist's report indicates Roberts originally told him he strangled the girl. However, Roberts later changed his story and described in gory detail how he electrocuted the girl. The latter story was also told to another psychiatrist.

Roberts pleaded guilty to murder in the second degree (Pen. Code, § 187) on October 30, 1973. The trial court adjourned the criminal proceedings and certified Roberts for hearing and examination (§ 6302) to determine whether he was an MDSO under section 6300 et seq. Roberts was found to be an MDSO and was committed to the Department of Health for placement at Atascadero State Hospital (§ 6316) where he remained until March 21, 1980, when he was transferred to Patton State Hospital.

The Board of Prison Terms determined Roberts' maximum term of commitment would expire on August 19, 1980. (§ 6316.1, subd. (b).) On May 16, 1980, the San Diego District Attorney filed a petition to extend Roberts' commitment as an MDSO (§ 6316.2, subd. (b)). At the hearing on the petition, the trial court ruled amenability to treatment was not one of the findings the trier of fact had to make in determining whether an MDSO's commitment could be extended. After Roberts waived a trial by jury, the trial court found Roberts to be an MDSO who presented a substantial danger of bodily harm to others (§ 6316.2, subd. (a)) and ordered his commitment be extended for two years. (§ 6316.2, subd. (f).)

Roberts contends his recommitment in the absence of a finding that he is amenable to treatment constitutes cruel and unusual punishment, a denial of due process and a denial of equal protection.

### DISCUSSION

Whether a finding of amenability to treatment is required before the commitment of an individual determined to be an MDSO may be extended under section 6316.2 is not a novel issue in California. The several appellate courts addressing this issue are in disagreement. (Compare *People* v. *Compelleebee* (1979) 99 Cal.App.3d 296 [160 Cal.Rptr. 233] and *People* v. *Lakey* (1980) 102 Cal.App.3d 962 [162 Cal.Rptr. 653] with *People* v. *Poggi* (1980) 107 Cal.App.3d 581 [165 Cal.Rptr. 758] and *People* v. *Henderson* (1981) 117 Cal.App.3d 740, 747 [172 Cal.Rptr. 858].) Roberts urges this court to follow *Compelleebee, supra*, and *Lakey, supra*, holding that an MDSO cannot be recommitted without a prior determination of amenability to treatment.

The California Board of Prison Terms is required, under subdivision (b) of section 6316.1, to compute the "maximum term of commitment" for all persons found to be MDSO's who committed a felony before

July 1, 1977, based upon the longest term of imprisonment which could have been imposed if the offense had been committed after July 1, 1977. A person so found to be an MDSO may be kept in actual custody beyond that maximum term of commitment only as provided in section 6316.2 (§ 6316.1, subd. (b).) Section 6316.2, subdivision (a), provides in relevant part: "A person may be committed beyond the term prescribed by Section 6316.1 only under the procedure set forth in this section and only if such person meets all the following:

"(1) The 'sex offense' as defined in subdivision (a) of Section 6302 of which the person has been convicted is a felony, whether committed before or after July 1, 1977 . . . .

"(2) Suffers from a mental disease, defect, or disorder, and as a result of such mental disease, defect, or disorder, is predisposed to the commission of sexual offenses to such a degree that he presents a substantial danger of bodily harm to others." Subdivision (j) of section 6316.2, which was added by the Legislature in 1979 and which was in effect at the time the petition for recommitment in the instant case was filed, further provides: "Amenability to treatment is not required for a finding that any person is a person as described in subdivision (a), nor is it required for treatment of such person. *Treatment programs need only be made available to such person.* Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program." (Italics added.) ■ Thus, although a person found to be an MDSO may not *initially* be committed for confinement in a state hospital or appropriate public or private treatment facility unless a finding is made "that the person could benefit by treatment" (§ 6316, subd. (a)(1)), the 1979 amendment has made it clear the Legislature did not intend to make such a finding a prerequisite to *recommitment.* (See *People v. Poggi, supra,* 107 Cal.App.3d at pp. 587-588.)

*People v. Poggi, supra,* is the most recent case to fully examine the issue of whether a finding of amenability to treatment is constitutionally required before the commitment of an MDSO may be extended. At the time of the earlier decisions of *Compelleebee, supra,* 99 Cal.App.3d 296, and *Lakey, supra,* 102 Cal.App.3d 962, and when the petition for extended commitment was filed in *Poggi,* section 6316.2 was silent as to whether such a finding was a necessary prerequisite to extending an MDSO's commitment. (*People v. Poggi, supra,* 107 Cal.App.3d at

p. 587; *People* v. *Compelleebee, supra*, 99 Cal.App.3d at pp. 299-300; *People* v. *Lakey, supra*, 102 Cal.App.3d at p. 970, fn. 7.)

However, unlike *Compelleebee* and *Lakey*, where the courts both determined subdivision (j) could not be given effect because it had been subsequently enacted, the *Poggi* court found the addition of subdivision (j) as an urgency statute with the express purpose of *clarifying* the law *precluded* the court from construing section 6316.2 together with other sections of the MDSO law to *imply* the requirement of a finding of amenability (*People* v. *Poggi, supra*, 107 Cal.App.3d at pp. 587-588). Dicta in *Compelleebee* and *Lakey* questions the constitutionality of subdivision (j) under *People* v. *Feagley* (1975) 14 Cal.3d 338 [121 Cal. Rptr. 509, 535 P.2d 373] (*People* v. *Compelleebee, supra*, 99 Cal.App. 3d at p. 302, fn. 4; *People* v. *Lakey, supra*, 102 Cal.App.3d at pp. 970-971, fn. 7).

Reliance on *Feagley, supra*, for the proposition that subdivision (j) is unconstitutional is misplaced. *Poggi* correctly distinguished *Feagley* in these respects: "Feagley was a mentally disordered sex offender who, in the unanimous opinion of the experts, would not benefit by care or treatment in a state hospital. Under *former* Welfare and Institutions Code section 6326, since repealed, he was thereupon committed for an *indeterminate* (and *unlimited*) *period* to a *prison* under the jurisdiction of the Department of Corrections. The Supreme Court repeatedly emphasized that Feagley was in a prison and as a practical matter did not have available to him the treatment facilities or programs of a state hospital. (*Id.*, 14 Cal.3d at pp. 362-376.) The court *held* that the state may not involuntarily confine a civilly committed mentally disordered sex offender (1) for an indefinite period (2) in a prison setting. (*Id.*, at p. 376.) Although the statute in question there contained no time limit, the court recognized that it was up to the Legislature to determine the length of term necessary to protect society against a potential recurrence of the dangerous conduct of a mentally disordered sex offender. (*Id.*)

"The new statutory scheme satisfies the requirements of *Feagley*. Unlike *Feagley*, an MDSO committed under section 6316.2 is not subject to an indefinite term. The extension is for a limited period of one year [now two years] (Welf. & Inst. Code, § 6316.2, subd. (f)). Each such extension comes about only after a trial at which '[t]he patient shall be entitled to the rights guaranteed under the Federal and State Constitu-

tions for criminal proceedings.' (Welf. & Inst. Code, § 6316.2, subd. (e).)

"A person subject to extension under section 6316.2 is not, like Feagley, confined in a prison setting. Rather, the person is committed to a treatment facility of the State Department of Mental Health, which is under a mandatory statutory obligation to provide treatment. (Welf. & Inst. Code, § 6316.2, subds. (f), (i).)" (107 Cal.App.3d at pp. 589-590; fns. omitted.) We agree. The *Poggi* court reasoning is sound. *Feagley* is distinguishable on its facts and in no way compels the conclusion subdivision (j) is unconstitutional.

■ Contrary to Roberts' contention, subdivision (j) does not violate the constitutional right to equal protection of the laws (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7) because it provides amenability to treatment is not required for a finding that a person who meets the requirements of section 6316.2, subdivision (a), may be subjected to a period of extended commitment. ■ As stated by our Supreme Court, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) ■ Roberts argues persons subject to extended commitment proceedings under section 6316.2 are "similarly situated" with persons initially committed as MDSO's under section 6316. However, unlike persons initially committed as MDSO's, who can be returned to the committing court for further proceedings on the criminal charge if it is subsequently found that they have not recovered and are still a danger to the health and safety of others (§ 6325, subd. (6)), persons who are subject to having their commitment extended have already been committed for the maximum term of commitment and can be kept in actual custody only as provided in section 6316.2 (§ 6316.1). Even if we were to assume these two groups were similarly situated, any distinctions drawn by section 6316.2, subdivision (j), between the findings required for extended commitments as opposed to those required, for an initial commitment as an MDSO, are necessary to further the state's compelling interest in preventing the "premature release of dangerous persons" (Stats. 1977, ch. 164, § 6, p. 638; *People v. Poggi, supra,* 107 Cal.App.3d at p. 592). Thus, subdivision (j) violates no principle of equal protection.

Roberts also contends extending the commitment of an MDSO without a finding of amenability would constitute cruel and unusual punishment. In *People* v. *Poggi, supra* (107 Cal.App.3d at pp. 589-592) and *People* v. *Henderson, supra* (117 Cal.App.3d at p. 747), these contentions were thoughtfully reviewed and rejected. We agree with the analysis made.

The order of commitment is affirmed.

Cologne, Acting P. J., and Froehlich, J.,* concurred.

A petition for a rehearing was denied September 28, 1981, and appellant's petition for a hearing by the Supreme Court was denied November 18, 1981. Bird, C. J., Newman, J., and Broussard, J., were of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.