[Crim. No. 5255. Fifth Dist. July 21, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMY DANIEL BUTTES, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Charles M. Bonneau, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN (G.A.), P. J.**—In 1975 appellant was found not guilty by reason of insanity of committing forcible oral copulation (Pen. Code, § 288a). Pursuant to the provisions of Penal Code section 1026, he was committed to the state hospital at Atascadero for treatment. Before his initial term expired, the district attorney filed a timely petition to ex-

tend the commitment for a period of two years (Pen. Code, § 1026.5, subd. (b)(1)), and on September 17, 1980, the jury found that by reason of mental disease, defect or disorder, appellant represented a substantial danger of physical harm to others. The court committed appellant to Atascadero for an additional two years. The issue of whether appellant was amenable to additional treatment was not submitted to the jury.

Appellant argues a number of legal issues. No issue is raised regarding the sufficiency of the evidence to support the jury's finding that appellant represented a substantial danger of harm to others. Accordingly, it is unnecessary to recite the facts contained in the hearings upon which the original or extended commitments were based.

*Amenability to Treatment as a Condition to Extended Commitment*

Appellant contends that present amenability to treatment is a condition to extending his term pursuant to Penal Code section 1026.5 and that the trial court erred in not submitting this issue to the jury. We will determine that neither the statute nor the equal protection or cruel and unusual punishment clauses of the Constitution require that result.

It is noted that amenability is not expressly required either at the time of the initial commitment (Pen. Code, § 1026) or at the time of the extended commitment (Pen. Code, § 1026.5). As is made clear by analogy to the now repealed mentally disordered sex offender statutes (Welf. & Inst. Code, § 6316 et seq.), the Legislature is fully capable of making clear when it does and does not intend to impose such a requirement. At the time of an initial MDSO commitment, Welfare and Institutions Code section 6316 required a finding that the individual "could benefit by treatment in a state hospital," whereas section 6316.2, subdivision (j), expressly stated amenability to treatment was not a prerequisite condition to an extended commitment.

■ Arguing that a person who is found not guilty by reason of insanity is a member of a class similarly situated to MDSO's, appellant asserts that he was denied equal protection because the amenability requirement is not a prerequisite to an extension pursuant to Penal Code

section 1026.5, whereas at the time of his extension amenability was a requirement to the extension of the term of MDSO's.[1]

Appellant relies upon *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097]. In that case the Supreme Court held the equal protection doctrine required the period of institutional confinement of persons who had been adjudged insane could not exceed the maximum term for the underlying offense unless grounds were established showing the person remained a danger to himself or others. The court ruled the commitment could be extended if the prosecution established the person committed remained a danger to the health and safety of others. "To the extent practicable, and in the absence of further legislation on the subject, the procedure for the extended commitment of persons committed following their acquittal on the ground of insanity should conform to the procedures specified in section 6316.2 of the Welfare and Institutions Code." (*Id.*, at p. 467.)

The specific equal protection challenge in that case was that the class of persons who had been adjudged insane had been unfairly selected and required to face indefinite confinement until they could establish their own fitness for release. (*Id.*, at p. 463.) In addressing the issue, the court noted other proceedings where confinement was based upon the underlying offense and noted that the preconditions for commitment of each class were similar; the initial commitment follows commission of a criminal act and is based upon a mental disorder which might present danger to others. (*Id.*, at p. 464.) Because of the similarities, the court concluded persons committed as MDSO's were "similarly situated" with persons who had been adjudged insane. (*Id.*, at p. 466.)

However, the *Moye* case did not find or deal with a requirement of amenability in an insanity context. It dealt only with the imposition of a

---

[1]Appellant's argument is grounded upon the assumption that an MDSO was constitutionally entitled to a finding of amenability before his term could be extended, citing this court's opinion in *People* v. *Compelleebee* (1979) 99 Cal.App.3d 296 [160 Cal. Rptr. 233] (see also *People* v. *Lakey* (1980) 102 Cal.App.3d 962 [162 Cal.Rptr. 653]). These cases held that amenability to treatment was a requirement of an extended term under the MDSO statutes and cast suspicion upon the constitutionality of subdivision (j) of section 6316.2 (enacted in 1979) which eliminated the amenability requirement in MDSO extended term commitments. (See *People* v. *Compelleebee, supra*, 99 Cal. App.3d 296, 302, fn. 4.) Suffice it to say that subdivision (j) of section 6316.2 was not before this court at the time *Compelleebee* was written and was not applicable to the case then being discussed. The subdivision was passed subsequent to the events therein.

requirement that a person remain a danger to himself or others before he can be committed for an extended term. Because there was no other procedure applicable for extending the term, the court imposed the requirements of the MDSO recommitment procedure "[t]o the extent practicable, and in the absence of further legislation applicable to commitments under Penal Code section 1026 . . . ." (See *In re Moye, supra*, at pp. 466-467.)

The court did not purport to impose all the MDSO protections or to hold that the two classes were similarly situated for amenability purposes. In response to *In re Moye*, the Legislature promptly enacted Penal Code section 1026.5, subdivision (b), providing for the procedural and substantive rights to be observed in extended term commitments for criminally insane defendants. As mentioned, there is no amenability requirement in the statute.

There is a fundamental difference between an MDSO and a person who has been acquitted by reason of insanity. The latter is found not guilty of committing the crime and cannot be punished by incarceration in prison (Pen. Code, § 1026). The MDSO has been found guilty of a crime, and the court has the option of sending him to prison if he is not committed to a state hospital. By contrast, the insane defendant can never be sent to a prison, and if there were an amenability requirement a person found not guilty by reason of insanity but not amenable to treatment could not be sent to a state hospital initially. The Supreme Court in *In re Franklin* (1972) 7 Cal.3d 126, 141-142 [101 Cal.Rptr. 553, 496 P.2d 465], recognized this difference when quoting from *Bolton* v. *Harris* (D.C. Cir. 1968) 395 F.2d 642, 651. The court stated: "[I]t is significant that the court in *Bolton* acknowledged governmental authority 'to treat persons acquitted by reason of insanity differently from civilly committed persons to the extent that there are relevant differences between these two groups . . . .'"

This position is supported by our Supreme Court's decision in the *Conservatorship of Hofferber* (1980) 28 Cal.3d 161 [167 Cal.Rptr. 854, 616 P.2d 836] and *People* v. *Bennett* (1982) 131 Cal.App.3d 488 [182 Cal.Rptr. 473].

In *Conservatorship of Hofferber, supra*, the defendant had been found mentally incompetent to stand trial (Pen. Code, § 1368 et seq.).

The trial court initiated civil conservatorship proceedings for the defendant, who had fulfilled his three-year commitment under Penal Code section 1370, subdivision (c)(1). The Supreme Court held that equal protection and due process are fulfilled in the recommitment if the state provides a hearing addressing the issues of whether by reason of mental disease, defect, or disorder the person represents a substantial danger of physical harm to others. In the course of its discussion, the court stated:

"The state has compelling interests in public safety and in humane treatment of the mentally disturbed. (Cf. Turnbull, *Law and the Mentally Retarded Citizen: American Responses to the Declarations of Rights of the United Nations and International League of Societies for the Mentally Handicapped—Where We Have Been, Are, and Are Headed* (1979) 30 Syracuse L.Rev. 1093.) It may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified. (*Baxstrom* v. *Herold* (1966) 383 U.S. 107, 111 [15 L.Ed.2d 620, 623-624, 86 S.Ct. 760]; *In re Gary W., supra,* 5 Cal.3d 296, 304 [96 Cal.Rptr. 1, 486 P.2d 1201].) Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of state power.

"California laws have long followed that premise. For certain purposes they properly classify, separately, those mentally ill persons against whom a judicial determination of criminal conduct has been made since such persons, at least initially, have demonstrated particular danger. (See *In re Moye, supra,* 22 Cal.3d 457, 462; *In re Franklin* (1972) 7 Cal.3d 126, 146 [101 Cal.Rptr. 553, 496 P.2d 465].)

"The California scheme permits long-term, renewable commitments of persons found not guilty by reason of insanity (Pen. Code, § 1026 et seq.), mentally disordered sex offenders (MDSO's) (§ 6300 et seq.), and those committed to the Youth Authority (§ 1800 et seq.; *People* v. *Smith* (1971) 5 Cal.3d 313, 317 [96 Cal.Rptr. 13, 486 P.2d 1213])—in each case on proof that they remain dangerously disturbed. On the other hand, violent persons not adjudicated under the criminal justice system are subject only to the short-term LPS Act procedure for 'imminently dangerous' persons. They, unlike those criminally committed, may not be confined indefinitely on psychiatric opinion alone. (§§ 5300, 5304.)" (28 Cal.3d at pp. 171-172; fn. omitted.)

Further, the special interest which the public has acquired in the confinement and release of people who have committed a crime and have been acquitted by reason of insanity is explicated in *People v. Balderas* (1980) 104 Cal.App.3d 942, 947-948 [164 Cal.Rptr. 275]: "A close reading of the Supreme Court's decision in *Moye, supra,* demonstrates their appreciation of the necessity to protect both the public and the individuals involved in this special class. The court states: "'[W]e agree with the Supreme Court of Maine, in *Chase* [*Chase* v. *Kearns* (Me. 1971) 278 A.2d 132], that 'The special interest which the public has acquired in the confinement and release of people in this exceptional class results from the fact that there has been a judicial determination that they have already endangered the public safety and their own as a result of their mental conditions as distinguished from people civilly committed because of only potential danger.' (278 A.2d at p. 138.)" (7 Cal.3d at pp. 146-147; see also Note (1973) 24 Hastings L.J. 487, 509 [burden of proof allocation under Pen. Code, § 1026a is "another measure of the greater precautions surrounding the handling of persons acquitted by reason of insanity, in order that the public interest may be protected"].)' (*In re Moye, supra,* 22 Cal.3d 457, 462-463.)"

*People v. Bennett, supra,* is in point. The court in that case refused to impose an amenability requirement in insanity extended term proceedings. Noteworthy is the fact that the same divisions of the Second District had theretofore followed this court's opinion in *People v. Compelleebee, supra,* 99 Cal.App.3d 296, in imposing a requirement of amenability in MDSO recommitment proceedings. (See *People v. Lakey, supra,* 102 Cal.App.3d 962.)

Given the overriding state interest in protecting the public from the dangerously insane who actually have committed a crime, it is clear why the Legislature imposed no amenability requirement at either the time of the initial commitment or at the time of the extended term. Accordingly, we conclude appellant has not been denied equal protection by the absence of an amenability requirement at the time of his hearing resulting in the extension of his term.

■ Appellant further contends that an extended commitment without a finding of amenability constitutes cruel and unusual punishment, citing *People v. Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373]. *Feagley* was an MDSO proceeding in which the MDSO was

found unamenable to treatment and given an indefinite sentence in a penal institution. The court held that it was cruel and unusual punishment to commit an MDSO to a prison for an indefinite term without providing treatment for him. However, the criminal insanity provisions of the Penal Code were held to be most closely analogous to the statutory framework for the commitment of incompetent criminal defendants. Those statutes do not impose an amenability requirement. (See *People* v. *Bennett, supra,* 131 Cal.App.3d 488, 491-492.) We agree with the *Bennett* court that extending the commitment of a person found to be criminally insane pursuant to Penal Code section 1026.5 without a finding of amenability does not constitute cruel or unusual punishment (*id.,* at pp. 493, 495-496), provided that he is afforded treatment for his condition. Obviously, *Moye* is not directly in point because, unlike *Moye,* neither the criminal extension proceeding nor the original commitment in the case at bench was for an indefinite term of confinement without treatment.

■ Next appellant urges that he was denied due process because his extended commitment was permitted on a lesser standard than was required for the original commitment.

Appellant's original commitment was based on insanity at the time of the offense. His commitment was extended by a finding that he has a mental disease, defect or disorder by reason of which he represents a substantial danger of physical harm to others.

Appellant's assumption that because the standard is different it is less stringent is not supportable. To continue the confinement, the prosecution must show beyond a reasonable doubt that the defendant is mentally ill and also show that he is a physical danger to others. In the original insanity trial, the defendant only need raise a reasonable doubt by a preponderance of the evidence that the defendant was mentally ill within the meaning of the not guilty by reason of insanity defense. Because the burden of proof is placed on the prosecution to prove beyond a reasonable doubt the two conditions required for an extended commitment, we cannot say that because the standard is different it is less stringent. In fact, it would appear that it would be more difficult to meet the standard for a continued commitment than it would be to show insanity on a plea of not guilty by reason of insanity.

In *In re Franklin, supra*, 7 Cal.3d 126, 145, the court recognized and inferentially approved the application of a standard for release which is different than the standard of original commitment. The court stated, at page 145: "Both petitioner and the People join in the proposition that the relevant standard under section 1026a is not whether the person committed is no longer legally insane, but whether he has improved to the extent that he is no longer a danger to the health and safety of others, including himself. [Citations.]"

In *People v. Henderson* (1980) 107 Cal.App.3d 475, 490-491 [166 Cal.Rptr. 20], the defendant in an MDSO proceeding argued the standard for release from commitment (Welf. & Inst. Code, § 6316.2) was more difficult to meet than the standard for commitment (Welf. & Inst. Code, § 6316.2). His argument was that to comport with due process, the standard of release must equate with the absence of the requirement for commitment. Otherwise, he argued, a person might remain involuntarily confined in a mental institution after he had improved to a point where he could not be committed. Like appellant in the case at bench, the appellant therein relied upon *O'Connor v. Donaldson* (1975) 422 U.S. 563 [45 L.Ed.2d 396, 95 S.Ct. 2486]. In rejecting appellant's contention in *Henderson*, the court stated: "The case did not involve statutes of the nature with which we are here concerned. As pointed out by the Supreme Court, the Florida commitment statutes provided '*no judicial procedure* whereby one still incompetent could secure his release on the ground that he was no longer dangerous to himself or others.' (Italics added; 422 U.S. at pp. 566-567, fn. 2 [45 L.Ed.2d at pp. 401-402, fn. 2].)

"The *O'Connor* opinion has no applicability to the California statutory pattern. (Cf. *Suzuki v. Quisenberry* (D.Hawaii 1976) 411 F.Supp. 1113.) The California statutes provide a comprehensive scheme for the release of MDSO's under appropriate circumstances. (§§ 6325, 6325.1, 6327.) The statutes incorporate all the fundamental aspects of fair play by providing the MDSO with abundant safeguards and means for continuous review of his mental state. The statutes may logically be interpreted to require the patient's discharge when the basis for the original commitment no longer exists. (See *People v. Youngs* (1972) 23 Cal.App.3d 180, 183-184 [99 Cal.Rptr. 901]; *Suzuki v. Quisenberry, supra*, 411 F.Supp. at p. 1134.) We note, finally, that an MDSO who claims he no longer fits the commitment criteria is entitled to judicial

relief via a writ of habeas corpus. (See *In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201].)" *People* v. *Henderson, supra*, 107 Cal.App.3d at pp. 490-491.)

By a parity of reasoning, the procedure under the insanity extension statutes satisfies the requirements of due process.

### *Recent Overt Act*

■ Appellant also argues that a recent overt act is constitutionally required for an extended commitment.

In support of his argument, appellant cites the federal case of *Suzuki* v. *Yuen* (9th Cir. 1980) 617 F.2d 173. That case dealt with a civil, not a criminal, commitment. The California Supreme Court in *Conservatorship of Hofferber, supra*, 28 Cal.3d 161, 172, has distinguished between people who have been criminally committed and those who are civilly determined to be dangerous. The court stated the latter class ". . . unlike those criminally committed, may not be confined indefinitely on psychiatric opinion alone."

*People* v. *Martin* (1980) 107 Cal.App.3d 714, 725 [165 Cal.Rptr. 773], is in point and rejects the contention that proof of a recent overt act is required where the commitment has been made on the basis of a criminal conviction. (See also *People* v. *Henderson, supra*, 107 Cal. App.3d 475, 491.) We agree.

### *Evidence Concerning Appellant's Consensual Homosexual Activity*

■ Before trial, the court held a hearing on the admissibility of testimony from the experts regarding appellant's homosexual activities which occurred in violation of hospital rules. Such acts often lead to violence. This evidence indicated that the hospital authorities had found appellant committing homosexual acts. The court ruled that Dr. Mansfield could refer to such acts because he indicated the fact appellant persisted in such activities in defiance of institution rules had a bearing upon the doctor's opinion as an expert regarding appellant's attitudes, cooperation, and mental condition. Such activity was not intended to show homosexuality is a mental illness per se. It was relevant to appellant's willingness to conform to the requirements of the hospital and his

unwillingness to take responsibility and was relied upon in part for the expert's opinion.

The court denied an Evidence Code section 352 objection regarding this testimony. The trial court did not abuse its broad discretion in ruling the probative value of the testimony outweighed any prejudicial effect. (*People* v. *Demond* (1976) 59 Cal.App.3d 574 [130 Cal.Rptr. 590].)

## Ex Post Facto

■ Lastly, appellant urges that appellant's two-year commitment violated the ex post facto clause of the Constitution.

Though appellant was committed in 1975, it was not until January 1, 1980, that he was subject to a two-year extended commitment. (Pen. Code, § 1026.5.) Between the date of the decision in *In re Moye, supra,* October 17, 1978, and the enactment of Penal Code section 1026.5 on January 1, 1980, appellant was subject to only a one-year extended commitment.

Appellant's argument is grounded upon the erroneous assumption that the original insanity commitment was a penal commitment. The law is to the contrary. (*Conservatorship of Hofferber, supra,* 28 Cal.3d at pp. 183-184; *People* v. *Superior Court (John D.)* (1979) 95 Cal. App.3d 380, 393-394 [157 Cal.Rptr. 157].)

Neither the original commitment nor the extension was criminal punishment but was for treatment in a state hospital. As the court stated in *Conservatorship of Hofferber, supra,* 28 Cal.3d 161:

"The 1974 LPS Act provisions, by contrast, have nothing to do with any punitive disability attached to the homicide charged against appellant at the time it occurred. They did not alter or affect the sentence for that crime. They did not extend, directly or indirectly, any incarceration that had been or could be imposed on appellant for criminal conduct. Indeed, because of appellant's potentially permanent incompetence, a criminal sentence or confinement probably will never be imposed. Unlike Mr. Valenzuela's, appellant's confinement arose not from criminal conduct but from his mental condition. He does not face incarceration

in a prison but must be placed in a state hospital or some other less restrictive setting. (§ 5358.)

"We conclude that the 1974 provisions, 'viewed as a system,' are not penal for purposes of the ex post facto clauses and do not impose punishment for crime, in letter or in spirit. *Valenzuela's* holding that the increased confinement there was unconstitutional because triggered by pre-amendment criminal conduct must be read in the context of procedures that actually extended a period of commitment for criminal conduct. We do not interpret *Valenzuela* to mean that all laws which civilly confine dangerous persons for the protection of society are subject to the ex post facto clauses." (*Id.*, at pp. 181-182; fn. omitted.)

The same principles apply to a commitment after a decision that appellant was not guilty by reason of insanity. (See also *People* v. *Superior Court (John D.), supra*, 95 Cal.App.3d at pp. 393-394.)

The judgment is affirmed.

Andreen, J., and Morony, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 30, 1982. Newman, J., and Reynoso, J., were of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.