[No. C019016. Third Dist. Aug. 8, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD RAY McCUNE, Defendant and Appellant.

COUNSEL

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Gregory W. Baugher and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Repondent.

OPINION

**DAVIS, J.**—In this case we construe Penal Code section 1026.5 (hereafter, section 1026.5), which governs state hospital commitments for those found not guilty by reason of insanity. Section 1026.5, subdivision (a), sets forth a "maximum term of commitment" (equal to the maximum prison term had there been a conviction); and section 1026.5, subdivision (b), sets forth an exception to this "maximum term": if the committed individual "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others," his or her commitment can be extended for successive two-year periods. (See § 1026.5, subd. (b)(1) & (8).)

Defendant's maximum commitment was extended pursuant to section 1026.5, subdivision (b)(1) (hereafter, section 1026.5(b)(1); other subdivisions of section 1026.5 will be designated in like fashion). On appeal, defendant contends (1) his extension trial did not begin 30 days before his commitment period ended as mandated by section 1026.5, (2) his commitment cannot be extended because he no longer suffers from the same mental disease, defect, or disorder as when he was originally committed, and (3) there is insufficient evidence to show a substantial danger of physical harm to others because (i) his underlying offense of nonviolent child molestation cannot be used to support such a finding and (ii) the 2 experts in this case offered inadequate factual bases for their opinions. We disagree with defendant's contentions and affirm the extension order.

The pertinent facts will be set forth in the discussion that follows.

## Discussion

### 1. *The 30-day Requirement*

■ Section 1026.5(b)(4) provides: "The [extension] trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless that time is waived by the person or unless good cause is shown." This 30-day provision, together with the section 1026.5(b)(2) requirement that the extension petition must be filed no later than 90 days before the existing commitment period ends (unless good cause is shown), allows a defendant to prepare a defense to the requested extension and be spared a commitment longer than his existing term. (*People v. Pacini* (1981) 120 Cal.App.3d 877, 891 [174 Cal.Rptr. 820]; see *People v. Minahen* (1986) 179 Cal.App.3d 180, 186, 189 [224 Cal.Rptr. 460].)

Defendant's original "maximum term of commitment" was slated to end July 1, 1994. (§ 1026.5(a)(1).) Apparently without affording defendant due process, the trial court held an extension trial and ordered defendant's commitment extended for two years on May 23, 1994. This May 23 order was later vacated, evidently as a result of a motion filed by defendant. On June 20, 1994, defendant's counsel advised the court that the 30-day requirement could not be met. The court referred this issue to the district attorney for review. Defendant then moved unsuccessfully to dismiss the extension proceeding; neither this motion nor the ruling on it appears in the record. There is nothing else in the record regarding how this 30-day issue was handled. An extension trial took place on July 26, 1994, and the trial court ordered defendant's commitment extended for a two-year period on July 29, 1994.

On appeal, a trial court's order is presumed correct and will not be overturned unless the record affirmatively shows the trial court erred. (*Corenevsky* v. *Superior Court* (1984) 36 Cal.3d 307, 321 [204 Cal.Rptr. 165, 682 P.2d 360]; *People* v. *Brown* (1988) 204 Cal.App.3d 1444, 1451 [251 Cal.Rptr. 889].) As noted, the record in this case does not affirmatively show that the trial court erred regarding the scheduling of defendant's extension trial. We cannot presume the trial court erred.

Defendant looks for solace in *People* v. *Pacini, supra,* 120 Cal.App.3d 877. In *Pacini,* this court concluded that a failure to comply with the section 1026.5(b)(2) *general requirement* that an extension petition must be filed *before* the existing commitment period ends deprived the trial court of jurisdiction to extend the commitment. (120 Cal.App.3d at p. 891.) Because of this conclusion, it was unnecessary to consider whether the *specific time*

*limits* in section 1026.5(b)(2) and (4)—respectively, the 90-day provision for petition filing and the 30-day provision for trial—were jurisdictional as well. (120 Cal.App.3d at p. 891.) When *Pacini* was decided, section 1026.5, subdivision (b)(2) and (4), stated, respectively, that an extension petition had to be "filed no later than 90 days before the expiration of the original commitment," and that an extension trial had to begin "no later than 30 days prior to the time the person would otherwise have been released, unless such time is waived by the person." (120 Cal.App.3d at p. 888, fn. 6, italics omitted.)

A few years after *Pacini*, subdivision (b)(2) and (4) of section 1026.5 was amended to state, respectively, that an extension petition had to be "filed no later than 90 days before the expiration of the original commitment *unless good cause is shown*," and that an extension trial had to begin "no later than 30 calendar days prior to the time the person would otherwise have been released, unless such time is waived by the person *or unless good cause is shown*." (Stats. 1984, ch. 1488, § 5, pp. 5205-5206, italics added.)

In part against the backdrop of this italicized language, the court in *People v. Minahen, supra,* 179 Cal.App.3d 180 construed the *Pacini* holding "as meaning only that such procedure [i.e., filing the extension petition before the previous commitment period ends] should be enforced absent good cause for relieving the district attorney from the consequence of a late filing." (179 Cal.App.3d at p. 188.) *Minahen* concluded: "[W]e perceive no reason why an extension petition cannot be filed and considered after the [previous] commitment term has expired upon a showing of good cause as to why the petition was not timely filed and assuming the defendant is afforded procedural due process [and has not been released from confinement]." (*Id.,* at p. 189; see also *People v. Mord* (1988) 197 Cal.App.3d 1090, 1108-1109, 1116-1117 [243 Cal.Rptr. 403].)

As noted, the record in this case does not show why the 30-day requirement of section 1026.5(b)(4) was not met, or whether there was good cause for not meeting this requirement. The statute does not require that a showing or a finding of good cause be made on the record. There is no dispute that defendant was afforded procedural due process for the July 26 extension trial. On this record, we must presume the trial court acted properly in starting defendant's extension trial after the 30-day deadline.

## 2. *A Change in the Mental Disorder Diagnosis*

■ Essentially, defendant argues that his commitment cannot be extended for a mental disorder different from the one for which he was originally committed. We disagree.

When defendant was found not guilty by reason of insanity and sent to the state hospital, he was initially diagnosed as schizophrenic. Shortly thereafter, he was diagnosed as having Axis I pedophilia and treated for that disorder, which treatment continues to the present day. The evidence shows that defendant no longer suffers from schizophrenia. Defendant argues that this situation is similar to a finding that his sanity has been restored, and cannot serve as a basis for extending his commitment. (See §§ 1026, 1026.2.)

Under section 1026.5(b)(1), a defendant's "maximum" commitment can be extended if the trial court finds the defendant has been committed "under Section 1026 for a felony [not guilty by reason of insanity] and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." There is nothing in this statutory language supporting defendant's argument. In fact, the language says "*a* mental disease, defect, or disorder" (italics added); it does not say "*that* mental disease, defect, or disorder." The critical question in extending a commitment is not whether a defendant has recovered from his or her originally diagnosed condition, but whether he or she by reason of *any* mental disorder continues to represent a substantial danger of physical harm to others. (See *People* v. *Bolden* (1990) 217 Cal.App.3d 1591, 1604-1605 [266 Cal.Rptr. 724]; *People* v. *Bennett* (1982) 131 Cal.App.3d 488, 497 [182 Cal.Rptr. 473]; *People* v. *Buttes* (1982) 134 Cal.App.3d 116, 125-126 [184 Cal.Rptr. 497]; *In re Franklin* (1972) 7 Cal.3d 126, 145 [101 Cal.Rptr. 553, 496 P.2d 465].)[1]

Sound reason counsels against defendant's view of section 1026.5(b)(1). The section is directed at treatment, not punishment. (*People* v. *Superior Court (Williams)* (1991) 233 Cal.App.3d 477, 485 [284 Cal.Rptr. 601]; see *People* v. *Buttes, supra,* 134 Cal.App.3d at p. 126; § 1026.5(b)(11).) Treatment seeks a positive change in mental health. Under defendant's view of section 1026.5(b)(1), an extended commitment could not take place if a change in mental status occurred. However, even though a defendant may be helped through treatment over the years, he or she may still represent a substantial danger of physical harm to others because of a mental disease, defect, or disorder. In fact, carrying defendant's view of section 1026.5(b)(1) to its logical absurdity, extended commitments would not be possible even if the committed person's condition had *worsened* (since indeed it had *changed*).

An aspect of timing is also important in interpreting the mental disorder component of section 1026.5(b)(1). Under section 1026.5(a)(1), a person

---

[1]The sanity restoration statute (Pen. Code, § 1026.2, subd. (e)) has a similar analytical framework in this respect. Under that statute, the term "sanity has been restored" "means the applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder." (See *People* v. *Williams* (1988) 198 Cal.App.3d 1476, 1481 [244 Cal.Rptr. 429]; *People* v. *Bolden, supra,* 217 Cal.App.3d at pp. 1604-1605.)

found not guilty of a felony by reason of insanity may be committed to a state hospital for a period as long as the maximum prison term for the crime. By definition, extended commitments under section 1026.5(b)(1) are sought only for those who have served their "maximum term of commitment." (§ 1026.5(a)(1) and (b)(1); see *People* v. *Minahen, supra,* 179 Cal.App.3d at pp. 188-189; *People* v. *Jenkins* (1985) 168 Cal.App.3d 41, 44 [213 Cal.Rptr. 904].) Thus, there is often a long period between the original commitment and an extended commitment proceeding under section 1026.5(b)(1). Many things could happen in that time span. A mental health condition could change. Medical knowledge could advance. Different diagnoses could emerge. Indeed, something as simple as a new medical "label" for a particular condition could gain acceptance. Defendant's view of the section 1026.5(b)(1) extension procedure would, in effect, bind that procedure to an individual's mental condition at the time of the original commitment. But an extension proceeding focuses on an individual's condition *at the time* of that proceeding, and asks whether the individual represents a substantial danger of physical harm to others because of that condition. (See *People* v. *Bolden, supra,* 217 Cal.App.3d at pp. 1604-1605; *People* v. *Bennett, supra,* 131 Cal.App.3d at p. 497; *People* v. *Buttes, supra,* 134 Cal.App.3d at pp. 125-126; *In re Franklin, supra,* 7 Cal.3d at p. 145; *People* v. *Jenkins, supra,* 168 Cal.App.3d at pp. 44-45.)

We conclude the trial court did not err in applying the section 1026.5(b)(1) language of "a mental disease, defect, or disorder" to defendant's postadmission diagnosis of Axis I pedophilia.

### 3. *Sufficiency of Showing of Substantial Danger of Physical Harm*

Defendant raises this question from two related angles. First, defendant contends essentially that since he simply "fondles" children, his nonviolent sexual molestation behavior does not provide a basis for showing a substantial danger of *physical* harm as required by section 1026.5(b)(1). Secondly, defendant asserts that the two expert opinions on this substantial danger issue were built on speculation rather than facts. We disagree with both claims.

### (i) *"Non-Violent" Child Sexual Molestation and Physical Harm*

It is true that section 1026.5(b)(1) speaks in terms of a "substantial danger of *physical* harm." (Italics added.) Nevertheless, it is difficult to conclude that child sexual molestation of the "fondling variety" engaged in by defendant (genital touching) does not encompass physical harm. This kind of child molestation involves a *physical* violation of the most intimate sorts. By

definition, the fondling of a child is *physical* and is directed in the most physically personal way against those least able to ward off attack. Furthermore, the evidence showed that defendant's psychological makeup created a potentially combustible mix if a child were to resist defendant's intimate advances. The trial court aptly concluded in this regard: "[T]here is inherent danger of physical harm in any situation of child molest, particularly here where the evidence reveals a complete lack of ability on the part of defendant to control his actions [see next section of this opinion for a review of the evidence on this point]."

Our view of physical harm in this case is also supported by the history of section 1026.5(b)(1). The felony requirement in section 1026.5(b)(1) is currently met by *any* felony accompanied by a finding of not guilty by reason of insanity ("such person has been committed under Section 1026 for *a felony*" [italics added]). (See *People* v. *Overly* (1985) 171 Cal.App.3d 203, 209, fn. 2 [216 Cal.Rptr. 924].) But that was not always the case. For several years, this felony requirement was limited to only certain specified violent felonies and a "generic" provision for "a felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person." (former § 1026.5(b)(1), Historical Note, 50A West's Ann. Pen. Code (1985 ed.) § 1026.5(b), p. 664; Stats. 1984, ch. 1488, § 5, p. 5205; *People* v. *Jenkins, supra,* 168 Cal.App.3d at pp. 44-45; *People* v. *Overly, supra,* 171 Cal.App.3d at pp. 208-209.) One of the specified violent felonies in the former section 1026.5(b)(1) was "a violation of Section 288," the offense for which defendant here was found not guilty by reason of insanity. (*Ibid.*) The court in *Overly* said that former section 1026.5(b)(1) "reflects the Legislature's determination to protect the public from persons who have committed *crimes of violence* or threats thereof and who, by reason of mental illness, remain dangerous." (171 Cal.App.3d at p. 209, italics added.) The law has therefore recognized, even if defendant has not, the physically harmful nature of Penal Code section 288 offenses.

### (ii)  *The Sufficiency of the Expert Opinions*

Defendant contends the two experts who testified at the extension hearing based their conclusions that defendant represented a *substantial* danger of *physical* harm to others on speculation rather than facts. (§ 1026.5(b)(1).) Thus, defendant asserts, the two opinions do not constitute substantial evidence to extend his commitment. We disagree.

In reviewing the sufficiency of evidence to support a section 1026.5 extension, we apply the test used to review a judgment of conviction; therefore, we review the entire record in the light most favorable to the

extension order to determine whether any rational trier of fact could have found the requirements of section 1026.5(b)(1) beyond a reasonable doubt. (*People* v. *Overly, supra,* 171 Cal.App.3d at p. 207; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

▇▇▇ The two experts who testified at defendant's extension trial were Dr. Amy Phenix, a clinical psychologist, and Tim Brown, a licensed clinical social worker.

Dr. Phenix concluded that defendant has a "very severe," "very major" mental disorder of Axis I pedophilia, which predisposes him "in a strong way" to reoffend once he is released from a structured, locked setting. This conclusion was based on defendant's history of repeated molestation from a very young age (early adolescence), the 12 to 15 psychiatric and psychological evaluations of defendant at the state hospital, defendant's failure to improve despite many years of treatment, and Dr. Phenix's own evaluation and psychometric testing. Dr. Phenix evaluated defendant for two and one-half hours; her evaluation consisted of a medical record review; a clinical interview; and the following tests: neuropsychological screening, MMPI-II, Rorschach, objective personality, and projective personality.

Dr. Phenix concluded that defendant is "[a]bsolutely a danger to others if released," and that the "precise danger" is he will "physically harm others" by sexually molesting children. Defendant, Dr. Phenix noted, has been treated for approximately eight years at the state hospital for Axis I pedophilia and has not improved at all. Defendant has received every treatment available in this field but he is still quite comfortable with his sexual interest in children; most people who are treated, noted Dr. Phenix, are quite troubled by this behavior. Defendant still has a remarkable 90 percent arousal rate to young children.

According to Dr. Phenix, the treatments defendant has undergone have helped other pedophiles, not in terms of cure but in terms of behavior modification. But these treatments have not yet helped defendant. Defendant does not value others, particularly children. In his interview with Dr. Phenix, defendant expressed sexual interest in children and stated that he often fantasized about having sex with them. Defendant was found to be hoarding pictures of small children. Within the year prior to Dr. Phenix's evaluation, a 26-page printout of child care centers was found in defendant's locker.

According to Dr. Phenix's testing, defendant has "very intense overbearing needs states" that "he just has to fulfill"; this psychological makeup, Dr.

Phenix explained, could result in defendant using force against an unwilling child victim. Although Dr. Phenix noted that in "one sense" this was speculation, she also stated there was "[d]efinitely a danger he could" and "[i]t's really a possibility."

Tim Brown is the program director for a community outpatient treatment program which treats those found not guilty by reason of insanity. Brown concluded that defendant presented too substantial a danger of molesting children to be treated safely in the community. This conclusion was based on his program's twice-annual evaluations of defendant, a review of hospital records, a similar conclusion from a more structured release program to which Brown referred defendant, and Brown's personal evaluation of defendant. Defendant himself told Brown he is a high risk.

Brown noted that many pedophiles, following treatment, have been released into the community and have been able to control their behavior and lead fairly normal lives; this included pedophiles similarly situated to defendant who have received the same type of treatment as defendant. The key factor for success, according to Brown, is the development of genuine insight and empathy for the child victims. Defendant, however, has undergone long-term treatment with very little progress.

We conclude there is sufficient evidence to support the trial court's conclusion that defendant, by reason of a mental disorder, represents a substantial danger of physical harm to others. (See *People* v. *Bennett, supra*, 131 Cal.App.3d at p. 497 [testimony by mental health experts is often the only way to establish whether the section 1026.5(b)(1) dangerousness exists]; *People* v. *Superior Court (Williams), supra*, 233 Cal.App.3d at p. 490 [a single psychiatric opinion that an individual is dangerous as a result of a mental disorder can constitute substantial evidence to support an extension].)

The extension order is affirmed.

Puglia, P. J., and Brown, J., concurred.

A petition for a rehearing was denied September 5, 1995.