Filed 3/14/13  P. v. Milentijevic CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G046744 |
|       v. | (Super. Ct. No. C-36111 ) |
| MILOSAV MILENTIJEVIC, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

\*                 \*                 \*

In 1976, the trial court found defendant Milosav Milentijevic not guilty of murder (Pen. Code, § 187; all further unspecified statutory references are to the Penal Code) by reason of insanity, and committed him to the California Department of Mental Health. Since the verdict, the court has extended Milentijevic's commitment (§ 1026.5, subd. (b)) several times. This appeal arises from the court's recent decision to again extend Milentijevic's commitment for two more years under section 1026.5. Milentijevic challenges the sufficiency of the evidence to support the court's finding he had serious difficulty in controlling his dangerous behavior. Specifically, Milentijevic contends the evidence demonstrated the medication Haldol "controlled his dangerousness" and that he would "continue to take Haldol as a condition of release." For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Milentijevic beat his mother to death with a table leg because of a paranoid delusion she stole his Social Security income and secretly gave him psychotropic medications. Three weeks before the killing, he left a mental health hospital against medical advice. He has remained at Patton State Hospital since his initial commitment in 1976.

Dr. Jody Ward, a clinical forensic psychologist, testified at Milentijevic's April 2012 commitment extension hearing. Ward was familiar with Milentijevic's medical and behavioral history, and interviewed Milentijevic on numerous occasions between 2005 and 2012. Ward opined Milentijevic suffers from incurable schizophrenia, undifferentiated type, which is a major psychotic disorder consisting of delusions, hallucinations, and disordered thinking and behavior. Ward believed Milentijevic's

2

delusions cause him "serious difficulty [in] controlling his dangerous behavior." Milentijevic takes the antipsychotic medication Haldol to manage his schizophrenia and will need medication for the rest of his life.

Ward also testified Milentijevic suffers from poly-substance drug dependence, primarily marijuana and LSD, although Milentijevic does not acknowledge he has a drug problem. Milentijevic's lack of insight regarding substance abuse "worsen[s] the prognosis" of his schizophrenia.

Before April 2009, Milentijevic committed 25 to 30 instances of physical violence requiring seclusion and five-point restraints. As a result, the court ordered involuntary medication. Milentijevic has not engaged in physical violence since he began taking his prescribed medication, but the absence of recent physical violence did not change Ward's opinion Milentijevic currently presents a substantial danger to others. Ward attributed Milentijevic's improvement to Haldol, but noted it was "very likely" he "would become dangerous as soon as he stopped" medicating. She also believed Milentijevic "experienced delusions" and exhibited "symptoms of his illness over the past…year" while taking Haldol.

Ward explained Milentijevic lived in a highly-structured environment where staff provided all his needs, which reduced his stress and dangerous behaviors. Ward believed, however, it was important to analyze how Milentijevic would function outside of his structured setting. The best indicators of outside functioning concern how well a patient follows treatment programs and instructions. Here, Milentijevic failed to participate in treatment for mental illness and substance abuse. His history at Patton showed either an express refusal to take his medication or an effort to avoid swallowing it while pretending to take it. He would hide from staff instead of attending therapy, and

did not actively participate in those therapy sessions he attended. Milentijevic also did not have a complete relapse prevention plan in place. For Ward, Milentijevic's lack of insight into his illness made struggle in an outside environment likely.

Even while taking Haldol, Milentijevic engaged in verbally assaultive behavior on numerous occasions. On May 15, 2011, he told a staff member to "shut up" after the employee attempted to discuss Milentijevic's use of cigarettes indoors. On April 11, 2011, Milentijevic told a staff member "fuck you" when the employee attempted to search him. On March 6, 2011, he told a staff member to "move your fucking ass from behind me" because he felt the staff member stood too close to him in the dining room. On December 30, 2011, he called a staff member a "bitch" after she told him to move away from a fence where he was talking to a girlfriend.

By the April 2012 hearing, Milentijevic took his medication voluntarily. In January 2012, Milentijevic told Ward his schizophrenia was in remission because of Haldol, he would continue medicating if released, and he would "get a prescription of Haldol and a backup prescription." Nonetheless, Ward felt Milentijevic believed he did not need medication.

Indeed, Milentijevic testified he was "all right" without the medication, he did not believe his mental illness made him violent or dangerous, and he would only take the medication when released because he is "forced" to do so. Ward noted Milentijevic's history demonstrated vacillation, "one moment saying he will take his medication, at the next moment saying he doesn't need it, and then saying again that he will take it and [then again] that he doesn't need it."

According to Ward, within the previous six months Milentijevic asked if he could stop taking his medication. Ward concluded Milentijevic did not appreciate the

4

"need for the medication over a long period of time," and had not "made the commitment" to medicate "when not forced to do so." Ward believed Milentijevic's medical condition was not in remission.

The trial court found Milentijevic had "serious difficulty in controlling his dangerous behavior," and found Milentijevic's testimony consistent with Ward's finding that Milentijevic will not medicate voluntarily. The court therefore granted the petition to extend Milentijevic's commitment another two years.

II

DISCUSSION

*Substantial Evidence Supports the Court's Order*

Milentijevic contends there was insufficient evidence demonstrating serious difficulty in controlling his dangerous behavior. He argues the evidence showed the drug Haldol "controlled his dangerousness," and that he would "continue to take Haldol as a condition of release."

We review the entire record in the light most favorable to the extension order to determine whether any rational trier of fact could find the requirements of section 1026.5 (b)(1) beyond a reasonable doubt. (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507-508 (*Crosswhite*).) We defer to the trier of fact if substantial evidence supports the order. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*).) In conducting our review we do not reweigh evidence or revisit witness credibility issues. (*Ibid*.) After reviewing the record, we conclude substantial evidence supports the trial court's decision.

Where a person is found not guilty of a felony by reason of insanity, the court may commit the person to a mental hospital for a period no longer than the

5

maximum imprisonment term the offense carries. (§ 1026.5, subd. (a)(1).) The People may petition the court to extend the commitment in two-year increments. (§ 1026.5, subd. (b).) The People must prove the person "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1).) To comply with due process, the People must show the mental disease, defect, or disorder causes the person "serious difficulty in controlling dangerous behavior." (*People v. Bowers* (2006) 145 Cal.App.4th 870, 878 (*Bowers*); *In re Howard N.* (2005) 35 Cal.4th 117, 127-128 (*Howard N.*) [commitment constitutes a significant deprivation of liberty and due process requires a finding the defendant has serious difficulty in controlling dangerous behavior]; *Addington v. Texas* (1979) 441 U.S. 418, 425.)

Whether the defendant represents a substantial danger under section 1026.5 is a question of fact to be resolved with the assistance of expert testimony. (*Crosswhite*, *supra*, 101 Cal.App.4th at 507.) A single expert opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support a commitment extension under section 1026.5. (*Bowers*, *supra*, 145 Cal.App.4th at 879.)

Here, substantial evidence demonstrated Milentijevic remained dangerous despite not physically assaulting anyone since taking Haldol. Milentijevic engaged in verbally threatening behavior on numerous occasions despite the medication. Ward opined Milentijevic's highly-structured lifestyle at Patton State Hospital reduced the incidents of dangerous behaviors and it was likely he would struggle outside an institutional setting. She noted he failed to participate in treatment for mental illness and substance abuse, he did not have a complete relapse prevention plan in place, and he lacked the necessary insight to treat his symptoms personally. Ward believed Milentijevic "experienced delusions" and exhibited "symptoms of his mental illness over

6

the past . . . year," his schizophrenia was not in remission, and he currently presented a substantial danger to others.

The evidence also suggested Milentijevic would stop medicating once released. Ward testified Milentijevic's record of voluntarily medicating was "spotty." While Milentijevic testified he would take Haldol if released, he also testified he would only take the medication because he was "forced", he was "all right" without the medication, and he did not believe his mental illness made him violent or dangerous. As Ward stated, Milentijevic historically vacillated over the issue of voluntarily medicating, "one moment saying he will take his medication, at the next moment saying that he doesn't need it, and then saying again that he will take it and [then again] that he doesn't need it." In the previous six months, Milentijevic asked to stop his medication. According to Ward, Milentijevic had not "made the commitment that he will take the medication" and had not "seen [the] need for the medication over a long period of time." Ward believed it was "very likely" Milentijevic "would become dangerous as soon as he stopped taking . . . medication." In sum, the record reflects Milentijevic does not believe he needs medication, will not take Haldol if given his druthers, and the court could not rely on his promise to medicate because he changed his stance from moment to moment.

Milentijevic contends the trial court could order him to receive Haldol intravenously to ensure it stays in his bloodstream. But there is no evidence in the record the court could monitor Milentijevic sufficiently to ensure he receives medication by injection. The method of administering Milentijevic's medication means little if he refuses to cooperate. Moreover, the argument ignores Ward's point that Milentijevic only controls his dangerousness through a combination of medication *and* a structured

7

environment. In addition, Ward found Milentijevic "experienced delusions" and exhibited "symptoms" of schizophrenia last year while taking Haldol.

Milentijevic relies on *In re Anthony C.* (2006) 138 Cal.App.4th 1493 (*Anthony C.*). In *Anthony C.*, a juvenile committed a lewd act on a child under age 14. (*Id.* at p. 1500.) When he turned 21, the prosecution filed a petition to extend the ward's commitment under Welfare and Institutions Code section 1800.[1] (*Id.* at p. 1502.) The appellate court found there was insufficient evidence of serious difficulty controlling sexually deviant behavior. (*Id.* at p. 1507.) The court noted the Youth Authority staff did not prepare a formal risk assessment, and the testifying staff psychologist could not credibly describe the factors quantifying the ward's risk level. (*Id.* at pp. 1506-1508.) The psychologist wavered regarding the ward's risk level, stating it was "'above low risk, at least medium risk or higher'" and "'some risk, moderate at least.'" (*Id.* at p 1506-1507. ) The psychologist did not testify about the degree of the ward's disorder, or that the ward's condition was incurable, repetitive, or compulsive.

The appellate court concluded the ward's crime was one of opportunity rather than compulsion, and the expert testimony did not "constitute substantial evidence that Anthony has serious difficulty controlling his behavior." (*Anthony C.*, *supra*, 138 Cal.App.4th at p. 1507.) The court found the expert based his testimony "as much on guesswork . . .as on relevant probative facts," and that moderate risk meant "'not seriously or permanently disabling or incapacitating.' [Citation.]" (*Ibid.*) The court

---

[1] Welfare and Institutions Code section 1800 allows a petition to extend commitment of certain persons in the control of juvenile authorities (see Welf. & Inst. Code, § 1766 et seq.) where the person "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality that causes the person to have serious difficulty controlling his or her dangerous behavior . . . ."

noted medication controlled the ward's attention deficit hyperactivity disorder and the psychologist did not know the correlation between a lack of impulse control and the risk of reoffending because of pedophilia. (*Id.* at p. 1507, fn. 10.)

Here, as explained above, Ward performed multiple evaluations of Milentijevic over a seven-year period. Her testimony articulated the risk factors forming the basis of her opinions. Ward opined Milentijevic's schizophrenia was incurable and prompted him to kill his mother. Ward also asserted Haldol did not completely prevent Milentijevic's delusions or change the fact he presents a current danger. Milentijevic had difficulty accepting the dimensions of his disorder and believed he did not need medication. Overall, the evidence illustrates Milentijevic's serious difficulty controlling dangerous behavior and distinguishes him from the patient in *Anthony C.*

Milentijevic also relies on *People v. Galindo* (2006) 142 Cal.App.4th 531 (*Galindo*). There, the trial court committed defendant under section 1026 for felon in possession of a firearm, and later extended his commitment under section 1026.5. (*Id.* at p. 533.) The Attorney General conceded the trial court failed to consider whether section 1026.5 required proof of serious difficulty in controlling dangerous behavior, as required under *Howard N.*, *supra*, 35 Cal.4th 117. (*Galindo, supra,* 142 Cal.App.4th at p. 533.) Thus, the *Galindo* court had to determine whether the trial court's failure to consider the "'control'" issue was prejudicial. (*Ibid.*)

In *Galindo*, the defendant suffered from bipolar disorder, antisocial personality disorder, and polysubstance dependence. (*Galindo, supra,* 142 Cal.App.4th at p. 533-534.) He denied suffering from a bipolar disorder, disavowed needing treatment or medication, and expressed ambivalence about medicating if released. (*Id.* at p. 534.) The prosecution's psychiatrist opined defendant would stop taking medication

9

immediately if released. (*Id.* at p. 533.) A defense psychiatrist evaluated the defendant, concluded he was sane, and stated defendant could take several preventative steps to reduce his dangerousness in the community. (*Id.* at p. 536.)

The court noted civil confinement under section 1026.5 is limited to those who suffer volitional impairments rendering them dangerous beyond their control. (*Galindo, supra,* 142 Cal.App.4th at p. 537.) But "dangerous" persons possessing volitional control are more properly dealt with through criminal proceedings. (*Ibid.*) The court noted defendant could control his behavior although he had not done so in the past, finding "little, if any, evidence" that he "encountered *serious difficulty*" in controlling his behavior. (*Id.* at p. 539.) Rather, "the evidence strongly suggested that defendant *did not try* to control his dangerous behavior [ ] because he perceived no reason to do so." (*Ibid.*) Thus, the trial court's failure to find the defendant had serious difficulty in controlling dangerous behavior was prejudicial because the evidence also supported a determination the defendant could exercise the requisite control over his actions. (See *id.* at p. 539.)

Here, the trial court considered the evidence under the appropriate standard and expressly found Milentijevic had serious difficulty controlling his dangerous impulses. *Galindo* measured the prejudicial effect of the trial court's error, but our task is not to determine prejudice, but whether substantial evidence supports the trial court's finding. (See *People v. McCune* (1995) 37 Cal.App.4th 686, 694-695; *Galindo, supra,* 142 Cal.App.4th at 536-538.) It does.

10

### III

#### Disposition

The order is affirmed.


ARONSON, J.


WE CONCUR:


O'LEARY, P. J.


MOORE, J.