Filed 9/15/20  P. v. Ho CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>IN SOO HO,<br><br>    Defendant and Appellant. | G057276<br><br>(Super. Ct. No. 15NF1264)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Patrick Donahue and Scott A. Steiner, Judges.  Affirmed.

Ferrentino & Associates and Correen Ferrentino for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

In Soo Ho pled guilty to one count of committing a lewd act on a child under 14 years of age. (Pen. Code, § 288, subd. (a).)[1] Prior to sentencing, he sought diversion pursuant to newly enacted section 1001.36. The trial court denied the motion after a full hearing, concluding Ho did not demonstrate he had a diagnosed mental disorder that played a significant role in the commission of the offense. (See § 1001.36, subds. (b)(1)(A) & (B).) Ho contends the court abused its discretion in denying him diversion. We disagree and affirm.

## PROCEDURAL SETTING

A felony complaint filed in 2015, charged Ho with one count of lewd act on a child under 14 years of age. (§ 288, subd. (a).) Ho was arrested and released on bond. He was represented by counsel and waived time for his preliminary examination. After a number of continuances, he pled guilty in March 2018, to lewd act on a child under 14 years of age, as alleged in a second amended complaint.

Judge Scott A. Steiner accepted the guilty plea and calendared the sentencing for May 25, 2018. Ho remained free on his bond. Days before the scheduled sentencing, Correen Ferrentino substituted in as Ho's counsel of record. On the date set for sentencing, the court took Ho into custody and continued the sentencing at Ho's request.

In September 2018, Ho filed a motion for diversion pursuant to section 1001.36. The prosecutor filed an opposition to the motion. Judge Patrick Donahue heard the motion for diversion in December 2018. At the conclusion of the evidentiary hearing, the court denied the motion, because it was "not satisfied that the defendant's mental disorder played a significant role in the commission of the charged offense."

Judge Donahue went on to state: "After hearing all the evidence, the court does not conclude that [Ho's] mental disorder substantially contributed to [Ho's]

---

[1] All statutory references are to the Penal Code.

involvement in the commission of the offense.  Based on the evidence there is not a showing how PTSD [post traumatic stress disorder] and major depression played a significant role in the facts that the court read and heard about in this case."

Judge Steiner subsequently sentenced Ho to six years in state prison with credit for 241 days in custody and 36 conduct credits pursuant to section 2933.1.  Ho filed a timely notice of appeal.

**FACTS**

The hearing on Ho's request for diversion pursuant to section 1001.36 consisted of the live testimony of  Dr. Laura Brodie, a psychologist with 22 years of experience, and the exhibits submitted by the parties, including reports of other mental health professionals.  Ho was 18 years old at the time of the offense in 2015.  When interviewed by police on the date of the incident, the five-year-old girl stated she saw Ho go into a men's room and followed him in to see what he was doing.  The gist of Ho's offense was that while the girl was in the restroom, he took photographs of her vagina.  On the date of the incident there was no indication Ho "touched her private parts."  The girl denied Ho touched her, notwithstanding the leading questions of the police officers.[2]

On the date of the incident, Ho told police he asked the girl if he could see her "pee pee."  He said she pulled down her pants partway and then he helped her pull them down the rest of the way.  He moved her to a toilet and had her sit on it.  He admitted spreading her legs while she was on the toilet.  Ho said seeing her vagina was fascinating.  Although Ho initially denied taking a photograph of the girl's vagina, he later admitted he took three close-up photographs of her vagina.  After taking the photographs, he told her to keep it a secret.  Ho denied having been sexually aroused.  He

---

[2] Nine months later, after police told the girl's mother to question her, a child abuse services team (CAST) interview was conducted and there was some indication Ho touched the girl "in her private area."

3

said he deleted the photographs because he had a guilty conscience. Ho also admitted telling the girl to keep it a secret.

Dr. Hy Malinek evaluated Ho in 2016. Tests conducted by Malinek indicated Ho had features of depression and psychosis, including hallucinations and suicide behavior. Voices told Ho he was worthless and to hurt himself. Malinek administered a STATIC-99 risk assessment test and concluded Ho posed a low threat of recidivism. Malinek stated Ho is "an emotionally vulnerable individual who requires substantial handholding and psychotropic medications to function optimally."

Dr. Stella Kim, a psychiatrist, examined Ho in 2015. She found Ho suffered from PTSD, depression, and a psychotic disorder. Mijin Park, a psychologist assistant, confirmed Ho had severe chronic PTSD. The PTSD was caused by years of "severe" bullying at school, which included Ho being stabbed, beaten and vilified. Kim's report stated Ho began experiencing auditory hallucinations five years earlier, suicidal ideation a year before her examination, and struggled with chronic depression as long as he could remember. She prescribed Prozac, an antidepressant, and Risperdal, an antipsychotic medication. Ho responded to the medications. They reduced his auditory hallucinations and he gained insight into his behavior.

Brodie met with Ho twice in August 2018, while he was in custody. She conducted a forensic interview and personal assessment inventory of Ho. She reviewed the police reports in this matter; the July 29, 2016 report of Malinek, a letter from Kim, and a letter from Park; as well as approximately 111 pages of jail mental health records; and the CAST interview of the five-year-old girl. At the time Brodie was asked to evaluate Ho, there had been no discussion of mental health diversion.

Brodie stated Ho received treatment while he was out of custody after the charged incident. Upon being taken into custody again, he decompensated and was placed in the jail "psych unit." The jail gave Ho Risperdal and an antidepressant while he

4

was in custody.  He was placed on suicide watch.  When the doctor visited Ho in jail, he was clear of any active psychosis.

Brodie stated that what Malinek observed of Ho's mental illness fits a DSM-V diagnosis.  She stated Malinek's evaluation of Ho was thorough and reliable. She agreed Ho suffers from PTSD as set forth in DSM-V.

As is common with PTSD sufferers, Ho withdrew and isolated himself and became distrustful of others.  Interactions with others was difficult.  He withdrew and associated mostly with his family.  He did not venture out to do the things one would expect from someone his age.  His parents speak Korean and there was no television in the house.  His mother helped him care for himself.

Brodie opined Ho suffered from a major depressive disorder with psychotic features and PTSD in February 2015.  She said he deleted the photographs because he either was concerned about his behavior, or he just did not want to keep them.  Brodie found it significant that Ho said he did not understand why he took the photographs.  She stated he may have taken the photographs because he was "curious."  He had never done anything like this before.  The cell phone with which he took the photographs had been given to Ho by his uncle and contained photographs of vaginas.

Brodie gave Ho a test to determine whether he had a sexual interest in children.  The test indicated he has a normal heterosexual interest in adolescents and adults, and no sexual interest in prepubescent males or females.  Although a prior IQ test indicates Ho is of average intelligence, Brodie believes he is of below average in intelligence.  She reviewed drawings Ho made.  She said they were quite immature and appeared childlike.

Brodie said she had an opinion as to whether Ho's mental disorders played a significant role in the charged conduct.  When asked what that opinion was, she stated: "Ho has not been socialized.  He has never had a girlfriend.  He had photos on - there were photos on a phone he was given [by] his uncle that had pictures of vaginas.  He does

5

not know how to socially interact to create pair bonding." She added that one does not simply hallucinate or have delusions with a psychotic disorder. There are also "negative symptoms, such as lack of socialization, poor judgment, poor impulse control, and more insight." Brodie stated therapy helps an individual socialize and understand what is appropriate and inappropriate, and medication reduces hallucinations.

At one point, Brodie stated, "Many times adolescent sexual acting out is curiosity." She said it appears Ho's action was motivated by curiosity. She concluded that someone with Ho's mental illness, thought disorder, the negative symptoms thereof, and who has not had treatment might act out based on curiosity. Brodie acknowledged the voices Ho has heard did not tell him to do anything to the young girl. She also informed the court Ho has cooperated with treatment and his family is supportive. In her opinion, Ho is amenable to treatment and is not a risk to reoffend.

## DISCUSSION

*Standard of Review*

The trial court found Ho failed to adequately demonstrate his mental disorder played a significant role in the commission of the charged crime, as required by section 1001.36, subdivision (b)(1)(B). As the statutory scheme gives the trial court discretion to grant diversion (see § 1001.36, subd. (a) [court "may" grant diversion on appropriate showing]), we review the trial court's decision denying diversion for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.)

A court's "discretion must be exercised in accordance and within the framework prescribed by the Legislature." (*Bruce M. v. Superior Court* (1969) 270 Cal.App.2d 566, 573.) Because we presume the court acted properly (*People v. McCune* (1995) 37 Cal.App.4th 686, 691), Ho must demonstrate the court's decision denying him diversion was irrational or arbitrary such that no reasonable person could agree with it. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) Moreover, to the extent the trial court's decision turns on factual findings, our resolution of those issues "'*begins* and *ends*

6

with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . .'" (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.)

*The Statutory Scheme*

In 2018, the Legislature added chapter 2.8A, to part 2, title 6, Diversion of Individuals With Mental Disorders, effective June 27, 2018. (Stats. 2018, ch. 34, § 24.) Pursuant to section 1001.36, subdivision (a), a court may grant pretrial diversion to a defendant with a mental disorder if the defendant meets the requirements set forth in subdivision (b)(1) of that section. "'[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).) Because this statute "provides a possible ameliorating benefit" to a class of individuals (*People v. Frahs* (2020) 9 Cal.5th 618, 624), Ho is entitled to its benefit, notwithstanding the fact he pled guilty, but had not been sentenced when it was enacted. (*Id.* at pp. 637-638.)

Pursuant to section 1001.36, a defendant may be granted diversion if the court is satisfied that: (1) he or she "suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder" (§ 1001.36, subd. (b)(1)(A));[3] (2) "the defendant's mental disorder was a significant in the commission of the charged offense" (§ 1001.36, subd. (b)(1)(B)); (3) a qualified mental health expert opines "the defendant's "symptoms motivating the criminal behavior would respond to mental health treatment" (§ 1001.36,

---

[3] Excluded from the nonexclusive list of qualifying mental disorders are "antisocial personality disorder, borderline personality disorder, and pedophilia." (§ 1001.36, subd. (b)(1)(A).)

subd. (b)(1)(C)); (4) the defendant consents to diversion and waives a speedy trial (§ 1001.36, subd. (b)(1)(D)); (5) the defendant agrees to comply with the terms of diversion (§ 1001.36, subd. (b)(1)(E); and (6) the defendant "will not pose an unreasonable risk of danger to public safety" (§ 1001.36, subd. (b)(1)(F)). The court must further be satisfied the recommended treatment program, either inpatient or outpatient, will meet the defendant's specialized needs. (§ 1001.36, subd. (c)(1)(A).) If these conditions are met, the court may divert criminal proceedings for a period of no longer than two years. (§ 1001.36, subd. (c)(3).)[4]

*Analysis*

As this appeal turns on whether Ho made the requisite showing under subdivision (b)(1)(B) of section 1001.36, and the Attorney General does not contend Ho failed to make the showings required by other subdivisions of the same section, we will assume for purposes of appeal that those showings were adequate.

In denying Ho's request for diversion, the court correctly noted that it must be satisfied Ho's mental disorder "substantially contributed to [his] involvement in the commission of the [charged] offense" in order to grant him diversion. (See § 1001.36, subd. (b)(1)(B).) The court observed Ho was diagnosed with major depression and PTSD, and recommended Ho participate in the sexual offender treatment program. Although the mental illness diversion under section 1001.36 did not exist when Malinek evaluated Ho in 2016, and thus the evaluation was not conducted with an eye to

_____

[4] Section 1001.36 has been amended twice since its enactment in 2018. (See Stats. 2018, ch. 1005, § 1; Stats. 2019, ch. 497, § 203.) At present, section 1001.36 contains a list of disqualifying charged offenses. Among that list are offenses that require sex registration under section 290 upon conviction, other than section 314 (§ 1001.36, subd. (b)(2)(B)), and a lewd or lascivious act on a child under 14 years of age (§ 1001.36, subd. (b)(2)(D)). Were either of these subdivisions in effect at the time of Ho's motion for diversion, he would not have been eligible for diversion under section 1001.36. Because we conclude the trial court did not abuse its discretion in denying Ho diversion, we need not decide whether the above amendments retroactively render Ho ineligible for diversion.

determining whether Ho's mental disorder played a significant part in the commission of the offense, Malinek "wonder[ed] whether low self-esteem, sexual preoccupation, and feeling of inadequacy, perhaps coupled with exposure to sexual media, has played a role in his conduct." This evidence undermines Ho's argument that his mental disorder substantially contributed to the commission of the offense.

Brodie opined Ho was suffering from major depressive disorder and PTSD in February 2015, and stated she had an opinion as to whether his mental illness played a significant part in the commission of the charged offense. However, when asked what that opinion was, she did not say his mental condition played a substantial role in his committing the offense. Rather, she stated, "Ho has not been socialized. He has never had a girlfriend. He had photos . . . on a phone he was given [by] his uncle that had pictures of vaginas. He does not know how to socially interact to create appropriate pair bonding." As noted above, she also said, "Many times adolescent sexual acting out is curiosity." Brodie said it appears Ho's action was motivated by curiosity. She concluded someone with Ho's mental illness, thought disorder including its negative symptoms, and who has not had treatment might act out based on curiosity. If "many" adolescents sexually act out based on their curiosity and Ho, an adolescent at the time, may have acted out of the same curiosity, this also undercuts the defense contention.

Although Brodie testified there were negative symptoms to Ho's mental illness, such as lack of socialization, poor judgment and poor impulse control, she also testified poor judgment and poor impulse control is common in most 18 year olds. "[I]n general, 18-year-olds are not that mature. An 18-year-old brain is not like an adult brain. It has poor judgment, poor impulse control. That's why they get into trouble the way they do." Although a psychosis may increase the judgment and impulsivity issues, there was no showing that occurred here. This evidence does not compel the conclusion that unlike other adolescents who act out sexually due to curiosity, Ho's mental illness caused or heightened such curiosity. When Brodie was asked about the possible effects of

9

negative symptoms of Ho's mental illness and a possible connection with the offense in this matter, Brodie said, "It *could* be." (Italics added.) "Could be" does not a substantial contribution make.

Moreover, the reasoning that negative symptoms could lead to "particularizing" of the child such that the interest is viewed not as a child, but as a vagina, is not binding on the court. Immediately after the photography was completed, Ho told the *child* to keep it a secret.

We cannot say as a matter of law that the evidence presented by Ho demonstrated unerringly that Ho's mental illness was a significant or substantial factor in the commission of the present offense. Accordingly, the court did not abuse its discretion in denying Ho diversion pursuant to section 1001.36.

## DISPOSITION

The judgment is affirmed.


THOMPSON, J.

WE CONCUR:


FYBEL, ACTING P. J.


GOETHALS, J.

10